UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MOHAMMAD DIN,

    Plaintiff,

    v.

MONTGOMERY COUNTY, MARYLAND,

    Defendant.

Civil Action No. TDC-20-1001

**MEMORANDUM OPINION**

Plaintiff Mohammad Din has filed suit against Defendant Montgomery County, Maryland ("the County") alleging employment discrimination. Specifically, Din alleges that he was denied a promotion based on age, national origin, and disability, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 (2018); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (2018); and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (2018). Presently pending before the Court is Defendants' Motion for Summary Judgment. Having reviewed the filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

Mohammad Din is a 69-year-old man of Pakistani origin who has a hearing impairment for which he wears a hearing aid in one ear and has a cochlear implant in the other. Din worked for the County for nearly 40 years, including 37 years in the Department of Transportation, Division of Traffic and Engineering ("the Traffic Division"). As of April 2016, Din was an Engineer Technician II in the Traffic Division. At that time, Din's immediate supervisor was Khursheed

Bilgrami. According to Din, Bilgrami was aware of his hearing impairment because his hearing aid was visible and because Bilgrami approved Din's sick leave requests for hearing treatment appointments.

### I.     The Program Specialist II Position

On April 15, 2016, the County posted a job announcement for the position of Program Specialist II in the Traffic Division. The position was open to current County employees only. The job responsibilities included "performing administrative, management and technical work related to the Residential Permit Parking Program" and serving as the "primary contact for the Division for on-street parking related issues outside of the County Parking Lot Districts." Joint Statement of Undisputed Facts ("J.S.U.F.") 1, ECF No. 33-1; Joint Record ("J.R.") 4, ECF No. 37. The job description also stated:

> The duties will emphasize customer service and liaison responsibilities which include providing program information to residents and public officials; attending citizen association meetings; compiling data and conducting field investigations; preparing and presenting testimony representing the Division and coordinating activities related to public hearings; managing the traffic order (legalization) process; and managing implementation activities of the residential permit parking program.

J.S.U.F. 1; J.R. 4.

The job posting specified five "preferred criteria" and stated that submitted resumés must include information specific to the preferred criteria. J.S.U.F. 2; J.R. 5. Those criteria consisted of:

1. Experience with and knowledge of residential permit parking policies and procedures and principles of traffic engineering related to evaluating roadways for potential parking restrictions.

2. Experience using geographic information system (GIS) program to create new and managing existing data in order to create new and modify existing maps.

3. Experience representing organizations and making oral presentations in meetings with the public.

2

   4. Experience compiling technical data and reports.

   5. Experience handling complex written and telephone inquiries and complaints from the public.

J.S.U.F. 2; J.R. 5.

## II.   The Hiring Process

Din was one of 10 County employees who applied for the Program Specialist II position. According to Din, when he told Bilgrami that he intended to apply for the position, Bilgrami told Din not to do so because he was "obsolete," hard of hearing, and had "aged out" of the position. J.R. 15.

Of the 10 applicants, five of them, including Din, were rated as "qualified." J.S.U.F. 2. Two of the qualified employees decided not to pursue the position, and the remaining three were interviewed: Din, Thomas Tyree, and Anthony Obuekwe. As of April 2016, Tyree and Obuekwe were 39 and 43 years old, respectively, and both are African American. Beginning in September 2015 and continuing through the application process for the Program Specialist II position, Tyree was serving as the Acting Program Specialist II.

The interview panel was led by Joseph Pospisil, then a Planning Specialist III in the Traffic Engineering Studies Section of the Traffic Division and the hiring manager for the position, who had previously held the Program Specialist II position and was to be the supervisor for the new hire. Bilgrami was not on the interview panel. In an affidavit, Pospisil has stated that Bilgrami was "not part of the decision-making process for the selection of this position." J.R. 3.

Following the interviews, the interview panel rated the three candidates on their job qualifications, personal accountability/ethics, customer service orientation, problem solving/sound judgment, and sensitivity/diversity awareness. Tyree received the highest ratings, Obuekwe

3

received the second highest ratings, and Din was third.  The interview panel recommended that Tyree be selected, he was offered the job, and he accepted it.

According to Pospisil, Tyree was deemed the "most qualified candidate" in part because he "had gained valuable experience in each of the different parts of the job" during the eight months he served as the Acting Program Specialist II, which made him "the most well-rounded candidate."  J.S.U.F. 3; J.R. 2.  The interview panel took the view that "the position was focused on oral and written communication skills" and found that Tyree had significant experience in those areas from his prior jobs with the County, including seven years as the Senior Executive Administrative Aide in the Office of the Director of the Department of Transportation.  J.S.U.F. 3; J.R. 2.  On the other hand, the interview panel concluded that Din "did not have the skill set [the County] was seeking for the position."  J.S.U.F. 3; J.R. 2.

In his affidavit, Din asserts that while working in the Traffic Division, he gained technical expertise with the software and systems used in that office, including the GIS program referenced in the preferred criteria.  As part of his duties, he also gave public presentations.  According to Din, he worked with Tyree from January 2016 to May 2016, while Tyree was the Acting Program Specialist II.  Din asserts that during that time, Tyree revealed to him that he had no knowledge of the systems in the Traffic Division, was not certified in and had not used GIS, and had not performed other technical operations.

Nevertheless, according to Pospisil, the interview panel found that as compared to Tyree, Din was "lacking in his experience in oral and written communication," which he had not developed to the same extent in his prior positions of Engineer Technician I and II.  J.S.U.F. 3; J.R. 2.  Because oral and written communication "was a key component" of the job, and Din lacked

the specific experience with the position's duties that Tyree had gained by serving as the Acting Program Specialist II for more than eight months, the County selected Tyree.  J.S.U.F. 3; J.R. 2.

## DISCUSSION

In its Motion for Summary Judgment, the County argues that Din has not presented sufficient direct or indirect evidence to create a genuine issue of material fact as to whether he was subjected to discrimination in the hiring process for the Program Specialist II position, and that the evidence instead shows that the County had a legitimate, non-discriminatory reason for selecting Tyree—that he was better qualified than Din.  In opposing the Motion, Din argues that summary judgment should be denied because Bilgrami's alleged statement that Din is "obsolete, had "aged out," and was hard of hearing, J.R. 15, provided direct evidence of discriminatory intent.  Din also argues that upon a comparison of the qualifications of Din and Tyree, and particularly where Tyree told him that he lacked technical knowledge of the GIS and the other systems in the Traffic Division, there is at least a genuine issue of material fact on whether the County's reasons for hiring Tyree were a pretext for discrimination.

### I.   Legal Standards

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court may rely only on facts supported in the record, not simply assertions in the pleadings.  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit

under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

The ADEA bars employment discrimination against individuals over the age of 40, 29 U.S.C. §§ 623(a)(1), 631(a); Title VII prohibits employment discrimination on the basis of national origin, 42 U.S.C. § 2000e-2(a); and the ADA forbids employers from discriminating against persons with disabilities, 42 U.S.C. § 12112(a)-(b). All three statutes require a plaintiff to establish a discrimination claim through one of two methods. A plaintiff may either demonstrate through direct or circumstantial evidence that age, national origin, or a disability "motivated the employer's adverse employment decision," or the plaintiff may proceed through the approach espoused in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004); *see Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (holding that the *McDonnell Douglas* framework applies to ADEA claims); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir. 1995) (holding that the *McDonnell Douglas* framework applies to ADA claims).

Under the *McDonnell Douglas* framework, the employee must first establish a *prima facie* case of discrimination. *Hill*, 354 F.3d at 285. If the employee does so successfully, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* Finally, if such a showing is made, the burden shifts back to the plaintiff to prove "by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Id.* In the context of a claim of a discriminatory failure to hire or promote, a *prima facie* case consists of a showing that the plaintiff: (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for that

position; (4) was rejected; and (5) "the position remained open or was filled by similarly qualified applicants outside the protected class."  *Williams v. Carolina Healthcare Sys., Inc.*, 452 F. App'x 392, 394 (4th Cir. 2011).

## II. Direct Evidence

In opposing the Motion, Din points primarily to Bilgrami's statement that he should not apply for the Program Specialist II position because he was "obsolete," "aged out," and hard of hearing as direct evidence of discriminatory intent.  J.R. 15.  Although the County does not concede that Bilgrami made this statement, it acknowledges that for purposes of the Motion for Summary Judgment, for which the Court must view the evidence in the light most favorable to the nonmoving party, the Court should consider it to have been made.

If Bilgrami had been the decisionmaker in the hiring of the Program Specialist II, this statement would have provided compelling direct evidence of discriminatory intent based on age and disability.  *See Hill*, 354 F.3d at 289 (stating that in general, "the requisite discriminatory motivation" must be held by the individual with "actual decisionmaking power and authority" over the adverse employment decision).  However, the parties agree that Bilgrami was not on the interview panel.  Moreover, Pospisil, the hiring manager and supervisor for the position, has provided a sworn statement that Bilgrami was "not part of the decision-making process for the selection of this position."  J.R. 3.  Significantly, Din has provided no evidence to refute this statement.  There is no evidence in the record that Bilgrami participated in any way in the hiring process.  Indeed, there is no evidence that Bilgrami was even consulted about the hiring decision generally or about Din's application in particular.  There is also no evidence that Pospisil or any member of the interview panel was aware of Bilgrami's statement at the time that they made the

7

hiring decision, or that they had any discriminatory views relating to age, disability, or national origin.

Even if there were evidence that Bilgrami had some involvement in the hiring process, that fact would be insufficient to provide a basis for a finding of discriminatory intent in the selection process.  In limited circumstances, discriminatory intent can be imputed to a formal decisionmaker who personally lacks such intent but is influenced by an action of a supervisor or other company official acting with discriminatory intent to a degree that such action is a proximate cause of the decision.  *Staub v. Proctor Hosp.*, 562 U.S. 411, 419–20 (2011) (applying this principle to an alleged violation of the Uniformed Services Employment and Reemployment Rights Act); *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 949 (10th Cir. 2011) (applying *Staub* "to all types of employment discrimination," including the ADEA).  However, a supervisor cannot merely have "substantial influence on the ultimate decision" or play a "significant" role in the decision; rather, a supervisor's discriminatory animus may support liability only if the supervisor was, in effect, "principally responsible for, or the actual decisionmaker behind, the action," such as when the formal decisionmaker effectively rubber-stamped the supervisor's recommendation.  *Hill*, 354 F.3d at 291.  There is simply no evidence in the record from which a jury could infer that Bilgrami had such a role in the hiring decision.  Where there is instead undisputed evidence that Bilgrami played no role of any kind in the hiring process, Din's account of Bilgrami's statement does not constitute evidence of a discriminatory hiring decision that creates a genuine dispute of material fact sufficient to avoid summary judgment.

### III.  The *McDonnell Douglas* Framework

In the absence of direct evidence of discrimination, Din must establish his claims through the *McDonnell Douglas* burden-shifting framework.  The County does not dispute, for purposes

of the Motion, that Din has met his burden to establish a *prima facie* case, as he was deemed qualified, he was not selected, and the position was given to someone outside of his protected classes. Similarly, Din does not dispute that the County has provided a legitimate, non-discriminatory reason for the promotion decision—that Tyree was the more qualified candidate. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (stating that because this step in the *McDonnell Douglas* framework "precedes the credibility-assessment stage," all that is required of the defendant at this point is the introduction of evidence which, if "taken as true, would permit the conclusion" that there was a non-discriminatory reason "for the adverse action"). The question before the Court is therefore whether Din has provided sufficient evidence to create a genuine issue of material fact on whether the County's stated reason was "pretextual or otherwise unworthy of credence." *Henson v. Liggett Grp., Inc.*, 61 F.3d 270, 275 (4th Cir 1995). In resolving the issue of pretext, the Court considers "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered" to determine whether judgment as a matter of law is appropriate. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148–49 (2000).

Din argues that his qualifications were sufficiently superior to those of Tyree that a reasonable jury could find that the County's stated reason for hiring Tyree was pretextual. To show pretext, Din relies on his assertion that over his 37 years of work in the Traffic Division, he gained technical expertise with the software and systems used in the Traffic Division, including the GIS specifically referenced in the preferred criteria. In contrast, he asserts that while he worked with Tyree from January 2016 to May 2016, Tyree admitted to him that he had no technical knowledge of the systems in the Traffic Division and had not used or been certified on the GIS or engaged in other technical operations. To counter the County's claim that Tyree was selected

9

because of superior oral and written communication experience, Din asserts that he has had experience conducting public presentations through his work in the Traffic Division. Din also argues that the fact that the two finalists who did not receive the job, Din and Obuekwe, were both over age 40—the ADEA's statutory age to be eligible to assert a claim of age discrimination—shows that the County's stated reason for hiring Tyree, who was 39, was pretextual.

Even viewing the evidence in the light most favorable to Din, the Court finds that he has failed to put forth evidence sufficient to create a genuine dispute of material fact. First, where Pospisil has asserted that the selection of Tyree was based in large part on the view that the Program Specialist II position "was focused on oral and written communications skills" and Tyree's stronger skills and experience in this area, Din has not identified evidence to refute the primary importance of communication skills to the position. J.R. 2. Rather, the position description, while noting that the job involves "administrative, management, and technical work," explicitly stated that "[t]he duties will emphasize customer service and liaison responsibilities," including interactions with residents, public officials, and citizen associations and testifying at public hearings. J.S.U.F 1; J.R. 4. Indeed, the Parties' Joint Statement of Undisputed Facts states that "the position was focused on oral and written communication skills," and that oral and written communication "was a key component of this position." J.S.U.F. 3. Nowhere does Din provide evidence to refute the County's assertion that of the preferred criteria, those relating to communication skills were the most important. Relatedly, while asserting that he had experience giving public presentations, Din has not produced any evidence to show that his oral and written communication skills were equal or superior to those of Tyree. A comparison of the two candidates application materials show that Tyree had significantly more extensive communications experience.

Second, in light of the focus on oral and written communications skills, Din's assertion that Tyree told Din at some point in the first half of 2016 that he lacked technical knowledge of the systems in the Traffic Division does not show that Tyree was not qualified for the position or was not the better candidate overall, particularly in light of the undisputed fact that, by the time of the hiring decision, Tyree had served as the Acting Program Specialist II for over eight months and Pospisil's unrefuted statement that Tyree "had gained valuable experience in each of the different parts of the job during that time." J.R. 2. Moreover, even if the statement alleged by Din was actually made by Tyree, where Tyree's application materials included detailed descriptions of his experience compiling technical data and using GIS and other relevant software, there is no evidence that the interview panel, which relied on those materials, was aware of any deficiencies in Tyree's technical background.

Third, Din's observation that Tyree was selected over another candidate over 40 years of age, Obuekwe, is of little probative value where Obuekwe was 43 years old and thus in the same age range as Tyree. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) (holding that an inference that an employment decision was based on an unlawful age discrimination "cannot be drawn" from the provision of the position to a worker who is "insignificantly younger").

In the end, while Din clearly believes subjectively that he was more qualified for the position than Tyree, and he has presented some evidence that he was more qualified on one of the criteria for the position, that evidence is not sufficient to preclude summary judgment. Even if the *McDonnell Douglas* burden-shifting analysis identifies the potential for a reasonable factfinder to disagree with the defendant's proffered legitimate, non-discriminatory reason for an employment decision, employers have "discretion to choose among equally qualified candidates provided the

11

decision is not based upon unlawful criteria." *Evans v. Techns. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Even if a reasonable factfinder could conclude that Din was the better overall candidate, it is the "perception of the decisionmaker which is relevant," and "[a]n employer is liable only for discriminating on grounds that are improper, not for differentiating for reasons that are mistaken." *Tavernier v. Health Mgmt. Assocs., Inc.*, 498 F. App'x 349, 351 (4th Cir. 2012).

To allow a case to proceed to trial, a court ultimately must conclude that there is sufficient evidence to support an inference that the hiring decision was actually infected by discriminatory intent. *See Ennis*, 53 F.3d at 59 ("Although we accept the *McDonnell Douglas* framework as a useful tool, it should not be applied in a rigid, mechanized, or ritualistic manner. The paradigm is merely a means to . . . sharpen the focus on the ultimate question—whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against her." (internal citation omitted)). Here, the record simply lacks "any significant probative evidence" tending to support the claim that the decisionmakers acted with discriminatory intent in failing to select Din for the Program Specialist II position. *Anderson*, 477 U.S. at 249; *see Camacho v. Colvin*, No. JKB-13-1303, 2015 WL 5439032, at *1–2, 7 (D. Md. Sept. 15, 2015) (granting summary judgment to the defendant in a case in which a selection panel chose a female candidate over a Hispanic male candidate, where both candidates had been rated "highly qualified" but the panel preferred the female candidate's interview answers and experience, and there was no basis to conclude that the panelists had "misrepresented their selection rationales" and had engaged in discrimination). Where Din has not provided sufficient evidence to create a genuine issue of material fact on this question, the Court must grant the Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: January 3, 2022

      /s/ *Theodore D. Chuang*
THEODORE D. CHUANG
United States District Judge